IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| YAA ACHAMPOMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00668-GBL-MSN |
| ) | |
| BOARD OF IMMIGRATION APPEALS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the parties' cross-motions for summary judgment. Dkt. 6 ("Pltf. Motion"); Dkt. 11 ("Def. Motion"). This case involves an Administrative Procedure Act ("APA") review of the Board of Immigration Appeals ("BIA") decision to dismiss Plaintiff's appeal of an Immigration Judge's order denying Plaintiff's Motion to Terminate Rescission Proceedings under Section 246 of the Immigration and Nationality Act. The issue before the Court is whether the BIA's decision was a clear error of judgment, arbitrary, capricious, or not otherwise in accordance with law.

The Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment for two reasons. First, Plaintiff has not demonstrated that all of the elements for private claim of equitable estoppel have been met, which is necessary to sustain a claim for equitable estoppel against the federal government. Second, even if Plaintiff could show that all of the elements for a private claim of equitable estoppel have been met, she has failed to meet her burden in demonstrating that the additional requirements for an equitable estoppel claim against the federal government have been met: (1) a showing of affirmative

misconduct on the part of the government, and (2) that serious injustice will result if equitable estoppel is not applied.

## BACKGROUND

The facts and procedural history of this litigation are largely undisputed. Plaintiff Yaa Achampoma is a native and citizen of Ghana. Dkt. 5-1, Administrative Record 26 (hereinafter cited as "A"). On October 21, 1996, Plaintiff's husband filed an I-130 Petition for Alien Relative on her behalf. A26. The petition was approved on October 31, 1996. A3. The Plaintiff and her two sons entered the United States on September 23, 2001, as "V" nonimmigrants, having received visas from the United States Embassy in Accra, Ghana.[1] *Id.* On October 26, 2001, the embassy in Ghana wrote to Plaintiff, notifying her that her visa applicant registration and any petition approved on her behalf had been cancelled. *Id.* On October 28, 2002, the embassy sent another letter, noting that because Plaintiff did not pursue her immigrant visa or request reinstatement within the time period allowed, her record of registration would be destroyed and any petition approved on her behalf returned to the Immigration and Naturalization Service ("INS"), now known as United States Citizenship and Immigration Services ("USCIS"). A3-4; *see also* § 203(g) of the Immigration and Nationality Act, 8 U.S.C. § 1153(g).

On November 29, 2002, USCIS received Plaintiff's approved I-130. A27. On July 30, 2003, Plaintiff filed an Application to Register Permanent Residence or Adjust Status, Form I-485. A4. Thereafter, on November 5, 2003, USCIS sent a letter to Plaintiff's husband, notifying him that the approval of his petition was revoked in accordance with 8 C.F.R. § 205.1(a)(1). A27. This revocation was based on the termination of the beneficiary's registration pursuant to

---

[1] Because the facts are the same for Plaintiff as they are for her two sons, and they are all beneficiaries of the same I-130 petition, it only necessary to refer to Plaintiff throughout this Memorandum Order and Opinion.

2

section 203(g) of the Immigration and Nationality Act ("INA" or "Act"). A27. Nevertheless, on August 5, 2005, USCIS approved Plaintiff's application for adjustment of status and she was accorded status as a lawful permanent resident. A4.

On April 1, 2010, USCIS served Plaintiff with a Notice of Intent to Rescind her lawful permanent resident status, pursuant to INA § 246 on the basis that she was not eligible for adjustment of status at the time her application was granted. A27. Plaintiff requested a hearing before an Immigration Judge, who subsequently denied her motion to terminate her rescission proceedings and ordered that Plaintiff's lawful permanent resident status be rescinded pursuant to 8 U.S.C. § 1256(a). A26-30. The order was issued on January 20, 2015. A30.

Plaintiff noticed an appeal of the Immigration Court's decision to the BIA. On May 16, 2016, the BIA issued a detailed decision affirming in full the Immigration Court's decision to rescind Plaintiff's lawful permanent residence status. A3-6. On June 16, 2016, Plaintiff filed a complaint in this Court, contending that the BIA erred in affirming the Immigration Judge's order and dismissing her appeal. Compl. ¶ 6 (Dkt. 1). Plaintiff then filed a Motion for Summary Judgment on September 12, 2016. (Dkts. 6, 7). Defendant subsequently filed a Cross Motion for Summary Judgment on October 15, 2016. (Dkts. 11, 12). Both motions are currently before the court.

## DISCUSSION

### A. Standard of Review

#### I. Statutory Framework

Under the INA, a lawful permanent resident can petition to obtain a visa for an alien relative by filing an I-130 petition with the INS/USCIS. 8 C.F.R. § 204.1(a)(1). Once the petition is approved, it contains a preference category and a priority date: "[t]he preference

3

category corresponds to the familial relationship between the alien and the person filing the I-130 form. The priority date is the date on which the approved I-130 petition was filed . . . ." *Robles-Tenorio v. Holder*, 444 F. App'x 646, 647 (4th Cir. 2011) (quoting *Drax v. Reno*, 338 F.3d 98, 114 (2d. Cir. 2003)) (internal quotation marks omitted). Spouses are covered by the second preference category and subject to certain conditions and numerical limits. 8 U.S.C. § 1153(a)(2). "Within the preference categories, immigrant visas are issued on a first-come-first-served basis. An alien's place in line is determined by his or her priority date[] . . . ." *Id.* (quoting *Kooritzky v. Reich*, 17 F.3d 1509, 1511 (D.C. Cir. 1994)) (internal quotation marks omitted). "The nonresident alien will eventually become eligible to file a Form I-485 Application to Register Permanent Residence or Adjust Status when his or her priority date is current—*i.e.*, at the time an immigrant visa is immediately available." *United States v. Atandi*, 376 F.3d 1186, 1191 (10th Cir. 2004).

Additionally, under the INA, an alien lawfully present in the United States is eligible for adjustment of status to lawful permanent resident if he or she meets certain statutory criteria. 8 U.S.C. § 1255(a). Section 1255(a) provides, in pertinent part:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

Although the text of § 1255 expressly authorizes the Attorney General to adjust an alien's status, that authority is now vested in the Secretary of Homeland Security by virtue of the Homeland Security Act of 2002. 6 U.S.C. § 271(b); *see also Clark v. Martinez*, 543 U.S. 371, 375 n.5 (2005).

Congress has specifically provided INS/USCIS with the authority to rescind the prior adjustment of an alien's status to that of lawful permanent resident, if it is subsequently determined that the alien was not eligible for the adjustment:

> If, at any time within five years after the status of a person has been otherwise adjusted . . . to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person . . . .

8 U.S.C. § 1256(a).

Federal regulations set forth the procedure for rescission proceedings brought pursuant to § 1256(a). If it appears to a District Director of the USCIS that an applicant who was granted permanent residence was in fact ineligible for adjustment of status, "a proceeding shall be commenced by the personal service upon such a person of a notice of intent to rescind, which shall inform him or her of the allegations upon which it is intended to rescind the adjustment . . . of status." 8 C.F.R. § 246.1. The notice also must inform the individual that: (1) she has 30 days in which to answer the allegations and (2) she may request a hearing before an immigration judge, at which she may be assisted by counsel or the representative of her choice. *Id.*

If the alien disputes USCIS allegations, an Immigration Judge convenes a hearing as part of the overall proceeding to adjudicate the question of rescission. 8 C.F.R. § 246.3. During the hearing, the Immigration Judge has the authority to interrogate and examine witnesses, present and receive evidence, and determine whether the status adjustment should be rescinded. 8 C.F.R. § 246.4; *see also* § 246.5. The government, through the Department of Homeland Security, bears the ultimate burden of establishing that the alien was not eligible to become a lawful permanent resident at the time that immigration authorities previously adjusted the alien's status. *See Matter of Hernandez-Puente*, 20 I. & N. Dec. 335, 337-38 (BIA 1991).

When the hearing concludes, the Immigration Judge is required to issue a decision and an order that directs "either that the proceeding be terminated or that the adjustment of status be rescinded." 8 C.F.R. § 246.6. If the alien is dissatisfied with the Immigration Judge's decision, he or she may appeal the decision to the BIA. 8 C.F.R. § 246.7.

## II. Summary Judgment in APA Review

Summary judgment is appropriate where there are no genuine issues of material fact and the reviewing court finds that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The claims in this case, however, involve dismissal of an appeal by the BIA, which is subject to judicial review under the APA. *Armah-El-Aziz v. Zanotti*, No. 1:15-CV-261 JCC/MSN, 2015 WL 4394576, at *3 (E.D. Va. July 16, 2015) (citing 5 U.S.C. § 702). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Where a court reviews the decision of an administrative agency, "a motion for summary judgment stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Chan v. U.S. Citizenship & Immigration Servs.*, 141 F. Supp. 3d 461, 464 (W.D.N.C. 2015) (citations and internal quotation marks omitted). "[T]he function of the district court is to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (citations omitted). Accordingly, the entire case on review is a question of law. *American Bioscience*, 269 F.3d at 1083 (citation and internal quotation marks omitted).

The APA establishes that, as a general rule, "agency action, findings, and conclusions" will be set aside only when they are "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556

F.3d 177, 192 (4th Cir. 2009) (citing 5 U.S.C. § 706 (2)). Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid. *Id.* (citing *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1400 (4th Cir. 1993)). Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes "a rational connection between the facts found and the choice made." *Id.* (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

"The court is not empowered to substitute its judgment for that of the agency." *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The court is to perform "only the limited, albeit important task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006).

### B. Analysis

In the memorandum supporting Plaintiff's Motion for Summary Judgment, Plaintiff initially argued that the BIA committed a "clear error of judgment" in three different ways. Dkt. 7. First, Plaintiff argued that the BIA erred in concluding that the United States could not be equitably estopped from seeking recession of her lawful permanent residence status, because of the allegedly negligent failure of the State Department personnel at the United States Embassy in Ghana to transfer Plaintiff's husband's alien relative petition to the United States upon the issuance of her V visa. Dkt. 7 ¶¶ 22, 24, 26, 33-35. Second, Plaintiff argued that the BIA committed a "clear error of judgment" by refusing to terminate rescission proceedings on statute of limitation grounds. *Id.* ¶ 32. Lastly, Plaintiff argued that the BIA committed a "clear error of judgment" by refusing to terminate rescission proceedings under a theory that the Department of

Homeland Security had not met its burden in demonstrating that Plaintiff was not eligible for lawful permanent resident status in August 2005, when USCIS granted her adjustment. *Id.* ¶¶ 36-39.

After reviewing the opening memorandum to Defendant's Motion for Summary Judgment and the precedents cited therein, Plaintiff withdrew the arguments that the rescission proceedings were time-barred and that the Department of Homeland Security had not met its evidentiary burden; Plaintiff conceded that these arguments were "no longer tenable." Dkt. 16 ¶ 3. Accordingly, the only remaining argument left for the Court to adjudicate is whether the BIA erred in concluding that equitable estoppel did not apply to the government's error.

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for two reasons. First, Plaintiff has not demonstrated that all of the elements for private claim of equitable estoppel have been met, which is necessary to sustain a claim for equitable estoppel against the federal government. Second, even if Plaintiff could show that all of the elements for a private claim of equitable estoppel have been met, she has failed to meet her burden in demonstrating that the additional requirements for an equitable estoppel claim against the federal government have been met: (1) a showing of affirmative misconduct on the part of the government, and (2) that serious injustice will result if equitable estoppel is not applied.

### a. *Plaintiff Has Not Established The Traditional Elements of An Equitable Estoppel Claim*

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment because Plaintiff has not successfully demonstrated that all of the traditional elements of an equitable estoppel claim have been met. One who seeks to assert

an equitable estoppel claim against the federal government must first demonstrate the traditional elements of equitable estoppel. *Dawkins v. Witt*, 318 F.3d 606, 611-12 (4th Cir. 2003). The traditional requirements for estoppel are as follows:

> "(1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel."

*Id.* n.6 (quoting *McCrary v. Fed. Emergency Mgmt. Agency*, 642 F. Supp. 544, 548 (E.D.N.C. 1986)).

Here, however, Plaintiff has failed demonstrate any sort of erroneous misconduct on the part of the State Department. Plaintiff, during administrative proceedings and in her Memorandum in Support of her Motion for Summary Judgment, asserted that two State Department cables—one issued in January 2001, the other issued in April 2002—required officials at the United States Embassy in Accra, Ghana to transmit Plaintiff's husband's approved alien relative petition to the National Visa Center ("NVC") once the embassy issued a "V Visa" in August 2001. Dkt. 7 ¶¶ 24, 26; *see also* State Department Cable No. 01-State-17318, sent on January 30, 2001; State Department Cable No. 2002-State-79357, sent on April 26, 2002. However, as the BIA correctly noted, Plaintiff has not cited any specific portion of the 2001 Cable to support her position that the United States Embassy in Accra should have returned the approved visa petition to the NVC, as opposed to proceeding under § 203(g) of the INA.[2] There is not a semblance of language in the 2001 Cable that even addresses the topic of

---

[2] The BIA found it "unnecessary to determine whether the United States Embassy engaged in procedural errors when cancelling [Plaintiff's] visa registration," because of its threshold conclusion that Plaintiff could not demonstrate the existence of the necessary "affirmative misconduct." A5 n.3. The BIA, nonetheless, explained its view on why the State Department Cables cited by Plaintiff did not support her argument that erroneous misconduct occurred.

transferring an alien relative petition from an overseas embassy to the United States upon issuance of a "V Visa." A119-122.

Furthermore, while the 2002 Cable states that embassies "may return the file to NVC" in cases where V visa applicants intend to process adjustment of status applications with the INS (USCIS), the 2002 Cable does not require consular posts to do so. *See* State Department Cable No. 2002-State-79357 ¶ 15. It is also important to note that the 2002 Cable was issued on April 26, 2002—eight months after the United States Embassy in Accra issued the "V Visa" to Plaintiff. Accordingly, to the extent that Plaintiff argues that the 2002 Cable somehow retroactively binds the actions of State Department officials in August 2001, this argument must fail. Nothing in the 2002 Cable suggests that the actions of State Department officials in 2001 are bound to the terms of the Cable. Plaintiffs have not identified the regulations or procedures that State Department officials allegedly violated.

Because the State Department Cables in question do not mandate any such transfer of Plaintiff's alien relative petition to the NVC, Plaintiff has not demonstrated that the State Department engaged in "misconduct" as required by the traditional elements of equitable estoppel. The BIA did not adjudicate Plaintiff's administrative appeal in a manner that reflects a "clear error of judgment." *Holly Hill*, 447 F.3d at 263. The BIA's decision was not arbitrary, capricious, or otherwise not in accordance with law. Consequently, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment on this ground.

### *b. Plaintiff Did Not Meet Her Burden In Demonstrating That The State Department Engaged In "Affirmative Misconduct"*

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment because even if Plaintiff could show misconduct on the part of the State Department, or demonstrate that she somehow detrimentally relied on the misconduct, she still has not overcome the significant burdens that come with asserting an equitable estoppel claim against the federal government. In addition to demonstrating the elements of a private equitable estoppel claim, a party seeking to equitably estop the government bears the burden of proving two additional elements in order to succeed. *United States v. Lancaster*, 898 F. Supp. 320, 323 (E.D.N.C. 1995). First, the party asserting estoppel must establish "affirmative misconduct" that goes beyond mere negligence. *Id.* (citing *United States v. Vanhorn*, 20 F.3d 104, 112 n.19 (4th Cir. 1994). Second, the party must show that not applying equitable estoppel would result in a serious injustice, and that the public will not be unduly burdened by the imposition of estoppel. *Id.*

Regarding the first additional element, when a litigant seeks to assert equitable estoppel against the federal government based upon the government's conduct or actions, Supreme Court decisions indicate that estoppel may only be justified, if ever, in the presence of affirmative misconduct by government agents. *Dawkins*, 318 F.3d at 611 (citing *Schweiker v. Hansen*, 450 U.S. 785, 786 (1981); *INS v. Hibi*, 414 U.S. 5, 8 (1973); *Montana v. Kennedy*, 366 U.S. 308, 314-15 (1961)). Mere negligent conduct on the part of federal officials does not amount to "affirmative misconduct" as required to sustain a claim of equitable estoppel. *See INS v. Miranda*, 459 U.S. 14, 18 (1982); *Angeles v. Dist. Dir.*, 729 F. Supp. 479, 485 (D. Md. 1990). Affirmative misconduct must be "more than a mistake by a government employee." *Fucron v.*

11

*United States*, 626 F. Supp. 320, 323 (D. Md. 1986). Here, Plaintiff does not even attempt to argue that the State Department's failure to transfer her husband's alien relative petition was intentional or malicious. In fact, she explicitly asserts that she "does not contend that any government official acted in bad faith or with maliciousness." Dkt. 16 ¶ 8. Taken together with her contention that the State Department instead engaged in "gross negligence and gross misconduct by way of a failure to follow the [law, regulations, polices, and procedures]," it is clear that Plaintiff has not met her burden in showing that the government engaged in affirmative misconduct as required by the Supreme Court and the Fourth Circuit. Plaintiff fails to meet the requirements of the first additional element for sustaining an equitable estoppel claim against the government.

With respect to the second additional element, which involves considerations of "serious injustice" and public policy, "[t]he law of estoppel against the government is narrow and can lead to harsh results." *See Angeles*, 729 F. Supp. at 486. The party seeking equitable estoppel against the government carries a "heavy burden." *Lancaster*, 898 F. Supp. at 322 (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 417 (1990). An equitable estoppel claim against the government is "rarely successful." *Id.*; *see also Gutierrez v. Lynch*, 830 F.3d 179, 182 (5th Cir. 2016) (noting that courts have been "extremely reluctant to grant equitable estoppel against the government"). Here, neither party has addressed the issue of whether serious injustice will result if this Court does not apply equitable estoppel to the current case. Moreover, neither party has addressed whether the public will be unduly burdened by the imposition of estoppel to the current case. Given the fact that: (1) equitable estoppel claims against the government are rarely successful and can lead to harsh results, and (2) Plaintiff did not find it prudent to raise any arguments in favor of finding that a serious injustice will result if this Court does not apply

equitable estoppel, the Court finds that Plaintiff has failed to meet its burden in demonstrating that the second additional element has been met. It is also worth noting that the Supreme Court has never sustained an equitable estoppel claim against the government, although it has refused to hold squarely that the doctrine of equitable estoppel can never be utilized against the federal government. *See Office of Pers. Mgmt.*, 496 U.S. at 422-24.

Accordingly, the Court holds that the BIA's decision to dismiss Plaintiff's appeal by precluding a claim of equitable estoppel against the federal government, was not a "clear error of judgment," nor was it arbitrary, capricious, or contrary to law. The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment on this ground.

## CONCLUSION

The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment for two reasons. First, Plaintiff has not demonstrated that all of the elements for private claim of equitable estoppel have been met, which is necessary to sustain a claim for equitable estoppel against the federal government. Second, even if Plaintiff could show that all of the elements for a private claim of equitable estoppel have been met, she has failed to meet her burden in demonstrating that the additional requirements for an equitable estoppel claim against the federal government have been met: (1) a showing of affirmative misconduct on the part of the government, and (2) that serious injustice will result if equitable estoppel is not applied.

For the reasons stated above, it is hereby

**ORDERED** that Plaintiff Yaa Achampoma's Motion for Summary Judgment (Dkt. 6) is **DENIED.**

**IT IS FURTHER ORDERED** Defendant Board of Immigration Appeals' Motion for Summary Judgment (Dkt. 11) is **GRANTED.**

**IT IS SO ORDERED.**

ENTERED this 2nd day of December, 2016.

Alexandria, Virginia
12/2/2016

/s/
Gerald Bruce Lee
United States District Judge